***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and upon reconsideration the Full Commission reverses in part and affirms in part the Opinion and Award of the Deputy Commissioner.
 *********** EVIDENTIARY ISSUES
Subsequent to the hearing, plaintiff submitted correspondence from Dr. David Nachamie dated June 28, 2010. This correspondence was submitted on July 26, 2010, which was subsequent to Dr. Nachamie's deposition and only one-day prior to the close of the record. Therefore, defendants did not have the opportunity to question Dr. Nachamie regarding the correspondence or to review it prior to submitting their Contentions and proposed Opinion and Award. Accordingly, the June 28, 2010 correspondence from Dr. David Nachamie is EXCLUDED from the record, with Defendants' Objection thereto being SUSTAINED.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On or about June 1, 2009 and on or about August 17, 2009, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. On all relevant dates, Employers Assurance (formerly AM Comp Assurance) was the carrier for defendant-employer. All parties have been correctly designated, there is no question as to the misjoinder of the parties, and the parties are subject to the jurisdiction of the North Carolina Industrial Commission.
2. On or about June 1, 2009, and on or about August 17, 2009, plaintiff was employed by defendant-employer as a warehouse manager.
3. Pursuant to an Industrial Commission Form 22 completed by defendants, plaintiff's average weekly wage is $738.50, yielding a compensation rate of $492.36. However, plaintiff contends that he earned $42,000.00 a year resulting in an average weekly wage of $807.69
4. Defendants filed an Industrial Commission Form 61 in both claims.
5. Plaintiff filed an Industrial Commission Form 33 on September 8, 2009. Defendants filed an Industrial Commission Form 33R on October 30, 2009.
6. The following documents were received into evidence:
 a. Plaintiff's Exhibit 1: Photograph of defendant-employer's warehouse;
 b. Plaintiff's Exhibit 2: Photograph of defendant-employer's warehouse;
 c. Plaintiff's Exhibit 3: Photograph of defendant-employer's warehouse;
 d. Plaintiff's Exhibit 4: Plaintiff's written statement for the June 1, 2009 incident;
 e. Plaintiff's Exhibit 5: Accident investigation report for the June 1, 2009 incident;
 f. Plaintiff's Exhibit 6: Manager's written statement for the June 1, 2009 incident;
 g. Plaintiff's Exhibit 7: Photograph of pot-hole at defendant-employer's facility;
 h. Plaintiff's Exhibit 8: Photograph of lighting at defendant-employer's facility;
 i. Plaintiff's Exhibit 9: Incident Report for the August 17, 2009 incident from Mr. Mike Gillelard;
 j. Plaintiff's Exhibit 10: Incident Report for the August 17, 2009 Incident:
 k. Plaintiff's Exhibit 11: Written statement for the August 17, 2009 incident from Mr. Jay Funderburk.
 l. Defendant's Exhibit 1: Packet of employee observation reports:
 m. Defendant's Exhibit 2: Transcript of plaintiff's recorded statement.
 n. Stipulated Exhibit 1: Notebook containing Industrial Commission forms, discovery responses, medical records and medical bills.
7. The issues for determination by the Full Commission are:
 a. Whether plaintiff sustained an injury by accident arising out of and in the course of his employment or sustained a compensable aggravation of a pre-existing condition as a result of the incident with defendant-employer on June 1, 2009, and if so to what indemnity and medical compensation, if any, is he entitled.
 b. Whether plaintiff sustained an injury by accident arising out of and in the course of his employment or sustained a compensable aggravation of a pre-existing condition as a result of the incident with defendant-employer on August 17, 2009, and if so to what indemnity and medical compensation, if any, is he entitled.
 c. Whether plaintiff has received unemployment compensation such as to entitle defendants to a credit pursuant to N.C. Gen. Stat. § 97-42.1.
 d. What is plaintiff's correct average weekly wage.
 ***********
Based upon the foregoing Stipulations and evidence of record, the undersigned enters the following:
 FINDINGS OF FACT
1. As of the February 17, 2010 hearing date, plaintiff was fifty-three (53) years of age. Plaintiff is a high school graduate and has taken some college level courses. Plaintiff also served in the United States military for ten years. Thereafter, plaintiff worked for an electronics company.
2. Plaintiff began working for defendant-employer as second-shift manager in November 2007. Plaintiff's worked from 5:30 p.m. until all of the orders were filled, which would normally be between 12:00 a.m. and 1:00 a.m. Plaintiff's duties included managing seventeen workers in a beverage distribution warehouse. In doing so, plaintiff would usually delegate tasks associated with picking orders, the obtaining of the appropriate products, and the loading of delivery trucks. When performing his managerial duties only, plaintiff worked at or near a podium, where he could observe the product move along the conveyor to ensure the correct items have been selected and are appropriately placed in the trucks. During a typical shift, thousands of cases of beer would be loaded along with kegs of beer and bottles of wine and water. Kegs of beer weighed between ninety and two hundred pounds. Approximately nineteen to twenty-four trucks would be loaded during a typical shift. Plaintiff testified that he did not normally load kegs, but would assist in doing so on busy shifts or when the shift was short staffed.
3. Regarding the specifics of filling an order, when an order came in, plaintiff would assign a team to fill it. A team consisted of two pickers, who would go throughout the warehouse to obtain the appropriate products, which would then be placed on a conveyor system. The products would move on the conveyor system to the appropriate delivery truck. Once the products reached the truck, two workers on the team would take the product and place it in the proper location inside the truck. Bottles of beer, wine, and water would be loaded on the truck first. After these items were loaded, the kegs would be loaded.
4. Due to the weight and size of the kegs, the conveyor system was not adequate to carry them all of the way into the trucks. Additionally, when loading a keg, the conveyor belt had to be retracted because there is not enough space to move a keg into the truck when the system was extended. Therefore, kegs would be placed on their sides, rolled to the appropriate location in the truck, and then placed right side up.
5. On June 1, 2009 into June 2, 2009, the second shift was short staffed, and defendant-employer had 4,400 cases of beer, and 75 kegs of beer that needed to be loaded. Plaintiff testified that because the shift was short staffed, and due to the amount of product needing to be loaded, he assisted the other workers in loading product. Plaintiff further stated that while loading a keg of beer into one of the final trucks of the shift, he experienced a sharp "weird" type pain in the front of his groin, and in his lower back. Plaintiff could not identify the exact time of the incident or describe exactly how it occurred.
6. Following the incident at issue, plaintiff reported its occurrence to one of the truck drivers, Mr. Tracey Williams and to Mr. James Coleman, the manager of the day shift. On June 5, 2009, Mr. Coleman prepared a "Manager's Written Statement" noting that plaintiff had called in to report his hernia injury.
7. Mr. Jamorya Funderburk, a former employee of defendant-employer, was working as a loader under plaintiff's supervision at the time in question. Mr. Funderburk testified that plaintiff did not load kegs during the shift and remained at the podium the entire time.
8. Based upon the totality of the lay and medical evidence of record, plaintiff's testimony regarding the mechanism of his groin and low back injuries on June 1, 2009, and the associated symptoms is accepted as credible by the Full Commission.
9. Plaintiff has produced sufficient evidence that he sustained his back injury during a judicially cognizable time period and that it was not the result of a gradual deterioration.
10. On June 1, 2009, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in the form of a specific traumatic incident of the work assigned involving his lower back.
11. The circumstances of plaintiff's injury on June 1, 2009 constituted an interruption of his regular work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences.
12. On June 1, 2009, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.
13. On June 4, 2009, plaintiff first sought treatment from his family physician, Dr. Peter Le of Progressive Medical Associates. At that facility, plaintiff was initially examined by Ms. Stacy Kristen Mullet, N.P., and reported experiencing back and groin pain after lifting a heavy keg at work. Plaintiff was diagnosed as having a left sports hernia or groin pull and musculoskeletal back pain. Plaintiff was then provided medication and medically excused from work until June 12, 2009.
14. On June 25, 2009, plaintiff was examined at Northcross Urgent Care, where he had been referred by defendant-employer. At that facility, plaintiff was examined by Ms. Cherie Gauthier, P.A., and reported having been injured while loading a beverage truck on June 1, 2009. Plaintiff was diagnosed as having a possible left inguinal hernia, restricted to light-duty, modified work and was referred for a surgical consultation.
15. On June 26, 2009, plaintiff was examined by Dr. William Beutel, surgeon. Records from that date reflect that plaintiff reported having been injured at work during a shift that ran from the evening of June 1, 2009 into the morning of June 2, 2009. Dr. Beutel diagnosed plaintiff as having a symptomatic hernia, for which a surgical repair procedure was performed on June 29, 2009. The repair involved the use of Kugel mesh. Dr. Beutel subsequently moved to Alaska, and provided no additional treatment following an initial period of post-operative care.
16. After Dr. Beutel moved out-of-state, plaintiff's hernia-related care has been provided by Dr. Robert Monson and Dr. David Nachamie.
17. For a hernia claim to be compensable a plaintiff must prove that (1) there was an injury resulting in a hernia or rupture, (2) the hernia or rupture appeared suddenly, (3) the hernia or rupture immediately followed an injury by accident or specific traumatic incident, and (4) the hernia rupture did not exist prior to the accident or specific traumatic incident.
18. Dr. Nachamie has opined that it was possible plaintiff's June 1, 2009 injury by accident caused or significantly contributed to his surgically repaired left sided hernia.
19. Both Dr. Le and Ms. Mullet, N.P., have opined that plaintiff's June 1, 2009 injury by accident caused or significantly contributed to his surgically repaired left sided hernia.
20. Based upon the totality of the credible lay and medical evidence of record, plaintiff sustained a left sided hernia which appeared suddenly as a result of and immediately following the June 1, 2009 injury by accident which did not exist prior to June 1, 2009. Additionally, based upon the totality of the credible lay and medical evidence of record, plaintiff sustained a left sided hernia which appeared suddenly as a result of and immediately following the June 1, 2009 injury by accident in the form of a specific traumatic incident of the work assigned which did not exist prior to June 1, 2009.
21. Following his surgery, plaintiff returned to work for defendant-employer in late July or early August 2009 on light duty. Plaintiff testified that on August 17, 2009, he was on defendant-employer's property when he tripped and fell in a pothole. Plaintiff further testified that as a result of the fall, he experienced pain in his left knee, lower back, and a pull where his hernia surgery had been performed.
22. Mr. Funderburk signed a statement reflecting that he witnessed this incident and that it occurred on August 17, 2009. Noreen Clark, a former employee of defendant-employer who has since been terminated, testified that she also witnessed the incident while she was eating lunch in her car on defendant-employer's property.
23. Despite the written statement, during his testimony, Mr. Funderburk renounced it and testified that he signed it only because he felt pressured to do so by plaintiff, his direct supervisor. Mr. Funderburk further testified that the incident occurred on August 13, 2009 and that plaintiff only stumbled slightly with no resulting injuries being observable.
24. According to Mr. Funderburk, the written statement he provided regarding plaintiff's alleged August 17, 2009 injury was factually untrue. Nonetheless, William Henry Bauer, Jr., defendant-employer's facility manager, testified that Mr. Funderburk was never disciplined for providing what defendants contend was a false or untrue written statement.
25. Based upon the totality of the lay and medical evidence of record, plaintiff's testimony regarding the mechanism of fall on August 17, 2009 and the associated symptoms is accepted as credible by the undersigned.
26. The circumstances of plaintiff's injury on August 17, 2009 constituted an interruption of his regular work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences.
27. On August 17, 2009, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.
28. Subsequent to his August 17, 2009 injury by accident plaintiff returned to Dr. Beutel on August 18, 2009. On exam, Dr. Beutel found slight tenderness, but no evidence of a reoccurrence or tear of the hernia repair.
29. Also on August 18, 2009, plaintiff was examined by Ms. Gauthier, and reported experiencing back and left knee pain, and his concern regarding a possible aggravation of his hernia surgery site. An examination of plaintiff's left knee revealed no acute injury and no evidence of a recurrent hernia was found.
30. Plaintiff also sought treatment for his left knee from Dr. Le, who has opined that the left knee condition for which he treated plaintiff was caused by the August 17, 2009 injury by accident.
31. There is insufficient medical evidence of record upon which to find that plaintiff's August 17, 2009 injury by accident materially aggravated his surgically repaired left hernia.
32. There is insufficient medical evidence of record upon which to find that plaintiff's August 17, 2009 injury by accident materially aggravated his pre-existing back condition.
33. The left knee condition for which plaintiff was treated by Dr. Le was the direct and natural result of and causally related to his August 17, 2009 injury by accident.
34. On February 12, 2010, Dr. eventually performed a laproscopic removal of left Kugel mesh and replaced it with 3DMax mesh.
35. On August 31, 2009, plaintiff was terminated for being insubordinate during a meeting about work performance issues. The meeting was not intended to result in his termination. However, plaintiff became disruptive, loud and patronizing towards Mr. Coleman. As a result of plaintiff's behavior, Mr. Bauer recommended termination and obtained approval to do so from defendant-employer's human resources department in Atlanta.
36. Defendants have produced sufficient evidence upon which to find that plaintiff was terminated for causes unrelated to his June 1, 2009 or his August 17, 2009 injuries by accident, but plaintiff was terminated for causes which a non-injured employee would ordinarily have been terminated. However, plaintiff has produced sufficient evidence upon which to find that his inability to earn wages in any employment beginning on September 1, 2009 was due to his June 1, 2009 and his August 17, 2009 injuries by accident.
37. Based upon the totality of the credible vocational and medical evidence of record, and as the result of his June 1, 2009 and his August 17, 2009 injuries by accident, plaintiff has been unable to earn any wages in his former employment with defendant-employer or in any other employment for the days he was entirely unable to work during the period of June 1, 2009 through August 31, 2009, and from September 1, 2009 through April 10, 2010.
38. Plaintiff has received unemployment compensation for the period of August 31, 2009 until to November 12, 2009, a period of approximately 10 weeks at the rate of $396.00 per week for a total amount of $3,960.00.
39. Pursuant to defendants' Industrial Commission Form 22 Wage Chart, plaintiff's average weekly wage was $738.50, yielding a compensation rate of $492.36. Over a 52 week period, an average weekly wage of $738.50 yields an annual salary of $38,402.00. Plaintiff contends that average weekly wage gleaned from the Form 22 is inaccurate, and that he earned $42,000.00 a year, which would result in an average weekly wage of $807.69. However, other than this assertion, plaintiff has not provided additional evidence as to specifically how the Form 22 reflects an inaccurate wage level. Accordingly, the undersigned finds that the best evidence available is the Form 22, and that on June 1, 2009 and August 17, 2009, plaintiff's average weekly wage was $738.50, yielding a compensation rate of $492.36.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On June 1, 2009 and August 17, 2009, plaintiff's average weekly wage was $738.50, yielding a compensation rate of $492.36. N.C. Gen. Stat. § 97-2(5).
2. In workers' compensation cases, a claimant has the burden of proving every element of compensability. Whitfield v. Lab Corp. ofAmer., 158 N.C. App. 341, 581 S.E.2d 778, (2003); Harvey v.Raleigh Police Department, 96 N.C. App. 28, 384. S.E.2d 549, disc. rev. denied,325 N.C. 706, 388 S.E.2d 454 (1989).
3. On June 1, 2009, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
4. On June 1, 2009, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in the form of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6); Fish v. Steelcase,Inc., 116 N.C. App. 703, 707, 449 S.E.2d 233, 237 (1994),cert. denied, 339 N.C. 737, 449 S.E.2d 233, 237 (1994).
5. For a hernia claim to be compensable a plaintiff must prove that (1) there was an injury resulting in a hernia or rupture, (2) the hernia or rupture appeared suddenly, (3) the hernia or rupture immediately followed an injury by accident or specific traumatic incident, and (4) the hernia rupture did not exist prior to the accident or specific traumatic incident. N.C. Gen. Stat. § 97-2(18); Pernell v. PiedmontCircuits, 104 N.C. App. 289, 409 S.E.2d 618 (1991).
6. Based upon the totality of the credible lay and medical evidence of record, plaintiff sustained a left sided hernia which appeared suddenly as a result of and immediately following the June 1, 2009 injury by accident which did not exist prior to June 1, 2009. Id.
7. Based upon the totality of the credible lay and medical evidence of record, plaintiff sustained a left sided hernia which appeared suddenly as a result of and immediately following the June 1, 2009 injury by accident in the form of a specific traumatic incident of the work assigned which did not exist prior to June 1, 2009. Id.
8. On August 17, 2009, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
9. There is insufficient medical evidence of record upon which to find that plaintiff's August 17, 2009 injury by accident materially aggravated his surgically repaired left hernia or his pre-existing back condition. N.C. Gen. Stat. § 97-2(6); Click v. Pilot FreightCarriers, Inc., 300 N.C. 164, 265 S.E. 2d 389 (1980);Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003);Young v. Hickory Bus. Furn.,353 N.C. 227, 538 S.E.2d 912 (2000).
10. The left knee condition for which plaintiff was treated by Dr. Le was the direct and natural result of and causally related to his August 17, 2009 injury by accident. Id.
11. Defendants have produced sufficient evidence upon which to find that plaintiff was terminated for causes unrelated to his June 1, 2009 or his August 17, 2009 injuries by accident for which a non-injured employee would ordinarily have been terminated.Seagraves v. Austin Co.,123 N.C. App. 228, 472 S.E.2d 397 (1996). However, plaintiff has produced sufficient evidence upon which to find that his inability to earn wages in any employment beginning on 1 September 2009 was due to his June 1, 2009 and his August 17, 2009 injuries by accident. Id.
12. Based upon the totality of the credible vocational and medical evidence of record, and as the result of his June 1, 2009 and his August 17, 2009 injuries by accident and related surgical procedures involving his hernia, plaintiff is entitled to be paid by defendants total disability compensation at the rate of $492.36 per week for the days he was entirely unable to work during the period of June 1, 2009 through August 31, 2009, and from September 1, 2009 through April 10, 2010. N.C. Gen. Stat. § 97-29; Russell v. Lowe's ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
13. Defendants are entitled to a credit against the total disability compensation awarded herein for the approximate ten 10 weeks of unemployment compensation paid to plaintiff at the rate of $396.00 per week for a total amount of $3,960.00. N.C. Gen. Stat. § 97-42.1.
14. As the result of his June 1, 2009 and his August 17, 2009 injuries by accident and related surgical procedures involving his hernia, plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including the expenses associated with his two hernia related surgical procedures and his left knee injury, when bills for the same have been processed pursuant to procedures established by the Industrial Commission. N.C. Gen. Stat. §§ 97-25; 97-25.1.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 A W A R D
1. Defendants shall pay to plaintiff total disability compensation at the rate of $492.36 per week for the days he was entirely unable to work during the period of June 1, 2009 through August 31, 2009, and from September 1, 2009 through the present and continuing until such time as he returns to work or further Order of the Commission. From the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the credit in defendants favor and the attorney's fee approved herein.
2. Defendants are entitled to a credit against the total disability compensation awarded herein for the approximate ten (10) weeks of unemployment compensation paid to plaintiff at the rate of $396.00 per week for a total amount of $3,960.00.
3. Defendants shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of his June 1, 2009 and his August 17, 2009 injuries by accident and related surgical procedures involving his hernia, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including the expenses associated with his two hernia related surgical procedures and his left knee injury, when bills for the same have been processed pursuant to procedures established by the Industrial Commission.
4. A reasonable attorney's fee of 25% of the compensation awarded herein is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
5. Defendant's shall pay cost.
This ___ day of March, 2011.
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ LINDA CHEATHAM COMMISSIONER